HOBERT E. PICKLESIMER v. SAM HENRY ROBBINS

No. 7227DC723

(Filed 29 August 1973)

1. Automobiles § 56— striking car stopped on ice-covered bridge — negligence

In this action arising from a collision on an ice-covered bridge between two cars traveling in the same direction, plaintiff's evidence was sufficient to support, but not to compel, a jury finding that the collision was proximately caused by defendant's negligence where it tended to show that defendant had a clear view of the bridge and plaintiff's car, which was already on the bridge, when he came around a curve 75 or 80 feet from the bridge, that he observed or should have observed plaintiff's car sliding slowly into the right-hand side of the bridge but that defendant delayed applying his brakes until he reached the bridge itself, and that defendant's car skidded across the ice on the bridge and struck plaintiff's car.

2. Automobiles § 75— sliding into curb on ice-covered bridge — contributory negligence

In this action arising from a collision on an ice-covered bridge between two cars traveling in the same direction, the evidence was insufficient to support a jury finding of negligence on the part of the driver of plaintiff's car where all the evidence was to the effect that plaintiff's driver approached the bridge at a moderate speed, that she then observed ice on the bridge and stopped before driving upon it, that she then drove very slowly upon the bridge, that other cars were on the bridge and were able to proceed safely despite the ice, that plaintiff's driver was required to stop because cars in front of her stopped to allow oncoming traffic to clear before turning onto an exit ramp at the far end of the bridge, that in doing so her car slid into the curb on the right side of the bridge and that she took prompt action to move it but was struck by defendant's car before she could do so.

APPEALS by plaintiff and defendant from *Mull, District Judge,* 30 May 1972 Session of District Court held in GASTON County.

This civil action arises from a two-car collision which occurred on an ice-covered bridge on the morning of 8 January 1971. Each party alleged that the collision resulted from the negligence of the other, and each seeks to recover of the other property damages for injuries to his vehicle. Plaintiff's car was being driven by his daughter as his agent under the family-purpose doctrine. Defendant was driving his own car. The collision occurred on the bridge which carries Edgewood Road (RP-1307) over Interstate 85 at a point about two miles south of Bessemer City, N. C. At that point Edgewood Road is

a two-lane paved road which runs in a generally north-south direction. The bridge is 75 to 80 feet long and crosses over all four lanes and the median of I-85. The speed limit on Edgewood Road was 55 miles per hour. Both cars were proceeding south on Edgewood Road, defendant's car being the following vehicle. Approaching the bridge proceeding south on Edgewood Road, there is an exit ramp on the right which leads down onto I-85. After crossing the bridge to its south end, there is a similar exit on the left.

At the trial before judge and jury plaintiff alone introduced evidence. Plaintiff's daughter testified in substance as follows: She was 23 years old and lived in Bessemer City. About 8:00 a.m. on 8 January 1971 she drove her father's car south on Edgewood Road, headed to work in Gastonia. The sky was cloudy and overcast and it had been raining, but there was no ice on the road. She could see ice in puddles where water had been standing on the side of the road. As she approached the bridge she could see it was iced over, so she came to a stop at the edge of the bridge and then "started up real slow again." There were two Volkswagens in front of her, which had stopped to let oncoming traffic go by before making a left turn into the exit ramp which leads down into I-85 on the other side of the bridge. To keep from hitting the Volkswagens, she had to stop on the bridge. As she started to stop, the right front wheel of her car bumped the rail on the bridge, her car turned to the right, slid over, and stopped. She was ready to move off again when defendant's car struck hers.

On direct examination plaintiff's daughter further testified:

"Edgewood Road is straight immediately prior to the time you get to the bridge. Well, you can see the bridge— there's a curve you come out of, and you can see it from there; maybe 75 or 80 feet away from there when you can see the bridge. Comparing the distance to the bridge and the distance from the bridge to the curve, I would say the two distances are the same length. I was at the first exit place, about 25 feet when I first saw the ice on the bridge, between the bridge and the curve. I was going about 15 or 20 miles an hour when I first saw the ice on the bridge. I had been going about the same speed as I rounded the curve. After I saw ice on the bridge, my car came to a stop before I got onto the bridge. The bridge looked frosty

looking and shiny in spots. I was about two-thirds across the bridge when my automobile came to a stop against the side of the bridge. I would say I was approximately 20 feet from the end of the bridge to where I had stopped. I saw Mr. Robbins' car when I started sliding. I looked up to the right to see if there was a car near enough to hit me. . . . I don't think that Mr. Robbins' car was on the bridge. I was going about five miles an hour when I hit the side of the bridge. The right tire of my car hit the bridge. No other part of the car struck the bridge. . . . When the front wheel hit the bridge, my car was in neutral when it came to a stop. I put it back in drive and started turning my wheels to move. Mr. Robbins' car hit my car before my car moved. In my opinion it was just a few seconds that I was motionless on the bridge before my car was struck. . . . My car was at about a 50 degree angle on the bridge. The front of my car pointed towards the bridge, not exactly this way, just my right front fender partways toward the bridge. I was headed south and that was the same direction I was in. My right door and then the front fender and axle was struck by Mr. Robbins' car. After the impact my car slid off the bridge and down on the right side, down on the grass. Mr. Robbins' car took my position on the bridge, but a little more straight. At the time I came to a stop the first time after I struck the curb of the bridge, I was still on my side of the road in relation to the center line of the bridge."

On cross-examination she testified:

"As I drove down Edgewood Road, I didn't see any ice on the road. I didn't have any trouble driving. As I approached the bridge, I came around a curve and was going 25 or 30. When you come out of the curve, you are 75 feet from the bridge. That's when you first see the bridge. You can see through the bridge—all the way through. And I was going about twenty-five or thirty at this point. And then I brought my car to a stop. I did not brake hard to come to a stop—it was normal braking and I got stopped. And that's because I saw the bridge had ice on it. It was frosty. You could see the ice on the bridge —actually see sheets of it. After I saw sheets of ice on the bridge, I went ahead and drove across it. There were vehicles ahead of mine—and I had to hit my brakes—and

the right front tire of my car hit the bridge. My car didn't spin out of control. It just slid over that way, and the tire hit the rail, but my car slid out of control. . . .

"I hit the bridge—but not very hard. It would be easy to knock the car into neutral. . . . I traveled maybe halfway across the bridge before I hit the brakes. I slid about maybe ten feet. That's until I hit the bridge, and that stopped me. Then the next thing was when Rev. Robbins' car hit my car. And I was still at a stop. And I hadn't been able to get started yet. . . .

"I guess the two Volkswagens I saw made their turn and left. They did not stop. They were not involved in any way in this collision. When my car struck the bridge, the curb was about eight to ten inches high."

Defendant, who was called and examined by the plaintiff as an adverse witness, testified in substance as follows: He was going home that morning, having gotten off from work a few minutes after seven o'clock. It is 60 or 65 feet between the edge of the bridge and the end of the curve as you come down Edgewood Road. You can't see across the bridge from the curve; you have to straighten out before you can see across the bridge. When he first observed plaintiff's car, it was already on the bridge and was skidding into the right-hand side of the bridge a little over halfway across. He was going about forty-five when he came out of the curve. He applied his brakes before he got to the bridge and just as he touched the end of the bridge. He did not see any ice on the road or on the side of the road that day and didn't see any ice on the bridge before he entered the bridge. He did not know how fast he was going when he entered the bridge or at the moment of impact. It is downgrade, and it seemed when he applied his brakes downhill he got faster. He further testified:

"When I first saw the vehicle driven by Miss Picklesimer that is what I focused my attention on. My reaction at that time was to stop. I was at the edge of the bridge when I hit the brakes. The car skidded. I was aware then there was ice on the bridge, and I skidded across the bridge to where her car was at, and I hit her because she was absolutely across-ways the road.

"My car hit her directly in the right side of her car. I touched no bumper at all because the end of her car

was pointed directly facing the bridge railing, and the two-lane road and the width of the car was blocking the road. I couldn't stop due to the ice, and I hit her. I had applied my brakes all the way across the bridge. When I got on the bridge, I locked my car down. We pushed my car off the bridge, it was so slick—just slid it off."

The highway patrolman who investigated the collision testified that the road was wet and there was some ice occasionally along the side of the road; the bridge was extremely slick with ice when he observed it, but he could not see the ice on the bridge until he walked out on it; Miss Picklesimer told him at the scene that the car in front of her was making a left turn, that she started to slow her vehicle down, and that it turned sideways with her and hit the right side of the bridge; defendant told him he was following the vehicle in front of him and that "she went up on the bridge and her vehicle turned sideways and he tried to stop to keep from hitting her, and was unable to stop."

At the close of the evidence each party moved for a directed verdict pursuant to Rule 50(a), each motion being made on the grounds that the evidence failed to disclose actionable negligence on the part of the respective movants and on the further grounds that the evidence disclosed, as a matter of law, contributory negligence on the part of his opponent. Both motions were allowed, and judgment was entered dismissing plaintiff's claim for relief and dismissing defendant's counterclaim. Both parties appealed.

*Harris & Bumgardner by Don H. Bumgardner; and Hedrick, McKnight, Parham, Helms, Warley & Jolly by Richard Feerick for plaintiff.*

*Carpenter, Golding, Crews & Meekins by James P. Crews for defendant.*

PARKER, Judge.

## PLAINTIFF'S APPEAL

[1] Viewing the evidence in the light most favorable to the plaintiff and giving him the benefit of every favorable inference which may reasonably be drawn therefrom, it is our opinion that the evidence was sufficient to support, but certainly not to compel, a jury finding that the collision was proximately

caused by defendant's negligence. The evidence would warrant the jury in finding the following: Defendant had a clear view of the bridge and of plaintiff's car, which was already on the bridge, at least by the time he came around the curve. At that time, while defendant was still 75 or 80 feet from the end of the bridge, he observed, or in the exercise of due care should have observed, plaintiff's car sliding slowly into the right-hand side of the bridge. Even though defendant might not have been able to see the ice on the bridge until he had approached somewhat nearer, the sight of plaintiff's skidding car was sufficient to put him on notice of some unusual and dangerous condition on the bridge. Despite this notice he delayed applying his brakes until he reached the bridge itself. He testified: "I was at the edge of the bridge when I hit the brakes." From the foregoing the jury might legitimately find that defendant failed to exercise that care and alertness which a reasonably prudent person would have exercised under the circumstances to slow or halt his vehicle before it reached the bridge, and that had he done so he could have avoided striking plaintiff's car. It is, of course, entirely possible that a jury hearing all of the evidence would determine that defendant did exercise due care, both in observing what was before him and in taking prompt action to avoid the collision, and that the collision resu'ted from conditions over which he had no control and which in the exercise of due care he could not have reasonably foreseen. We hold, however, that the issue of defendant's negligence was one for the jury to determine and that it was error to direct a verdict for defendant on that issue. We further hold that the directed verdict for defendant cannot be sustained on the second ground stated in defendant's motion, i.e., that the evidence established plaintiff's contributory negligence as a matter of law; as hereinafter noted in our analysis of defendant's appeal, not only does the evidence fail to establish plaintiff's contributory negligence as a matter of law, but in our opinion it was insufficient even to warrant submission to the jury of an issue as to plaintiff's negligence.

## DEFENDANT'S APPEAL

[2] Viewing the evidence in the light most favorable to the defendant we find the evidence insufficient to support a jury finding that the collision was proximately caused by any negligence on the part of the driver of plaintiff's car. All of the evidence is to the effect that she approached the bridge at a

moderate speed. She observed the ice on the bridge in time to stop before driving upon it, thus demonstrating that she was both maintaining a careful lookout and keeping her car under control. She started up again, driving very slowly. Other cars were on the bridge and, so far as the evidence discloses, were apparently able to proceed safely despite the ice. Her entrance upon the bridge under these circumstances in our opinion would not warrant a finding of negligence on her part. Because the cars in front of her stopped to allow oncoming traffic to clear before turning left into the exit ramp at the far end of the bridge, she was also required to stop. In doing so, her car slid into the curb on the right side of the bridge. "The mere skidding of a motor vehicle does not imply negligence," *Coach Co. v. Burrell,* 241 N.C. 432, 85 S.E. 2d 688, and the skidding of plaintiff's car under the circumstances here disclosed does not, in our opinion, imply any negligence on the part of its driver. After her car had slid to a stop against the curb on the right-hand side of the bridge, all of the evidence shows she took prompt action to move it but that before she could do so it was struck by defendant's car.

The result is:

On plaintiff's appeal the judgment allowing defendant's motion for a directed verdict is reversed and the case is remanded for a

New trial.

On defendant's appeal the judgment allowing plaintiff's motion for a directed verdict and dismissing defendant's counterclaim is

Affirmed.

Judges CAMPBELL and MORRIS concur.